Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| KHETAM ODEH Y OTROS<br><br>Recurrido<br><br>v.<br><br>AWADALLAH ODEH<br><br>Peticionario | KLCE202301271 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.:<br>CG2021RF00853<br><br>Sobre:<br>Custodia |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Campos Pérez.[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de enero de 2024.

Comparece la parte peticionaria, señor Awadallah Odeh, mediante un recurso de *certiorari*, y nos solicita que revoquemos la *Resolución* emitida el 16 de octubre de 2023, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En el referido dictamen, el foro primario denegó el descubrimiento de prueba solicitado por el compareciente, en torno a los ingresos de la parte custodia, recurrida en el caso de autos.

Adelantamos que, luego de considerar el escrito de la parte peticionaria, así como los documentos que lo acompañan y el Derecho aplicable, y sin la comparecencia de la parte recurrida, acordamos expedir y confirmar el dictamen impugnado.

**I.**

La causa presente se inició el 16 de noviembre de 2021, ocasión en que la parte recurrida —conformada por la señora Khetam Odeh, madre del peticionario y abuela paterna de I.A.O. y S.A.O., y Akram

---

[1] El Hon. José I. Campos Pérez sustituyó al Hon. Eric R. Ronda del Toro, por virtud de la Orden Administrativa TA-2023-212, emitida el 6 de diciembre de 2023.

Odeh, tío de los menores— instó una *Demanda de Custodia*.[2] En síntesis, adujo que, el 14 de enero de 2015, el tribunal *a quo* concedió al peticionario la custodia de sus tres hijos.[3] No obstante, se alegó que desde el 2013, la parte recurrida ostenta la tenencia de los menores, debido a poco interés del peticionario en relacionarse con sus hijos y cumplir con sus responsabilidades como progenitor. La parte recurrida alegó que, durante un periodo en que I.A.O. y S.A.O. estuvieron con el peticionario, éste los mantuvo aislados y sin supervisión, los privó de educación, alimentos y los maltrató física y psicológicamente. Afirmó que los menores le temen a su padre. Por consiguiente, mediante su acción civil, solicitó la custodia de I.A.O. y S.A.O.

El 24 de enero de 2022, el peticionario presentó *Contestación a Demanda*, así como una *Reconvención*.[4] En esencia, negó que la parte recurrida tuviera la custodia *de facto* de los menores y que el tío haya asistido a los abuelos en la crianza de sus hijos. Aseguró que la parte recurrida ha sido custodia de los menores de manera ilegal y en contra de su voluntad. También rechazó las alegaciones de maltrato. Aseveró que amaba a sus hijos, que temía que los sustrajeran de esta jurisdicción sin su anuencia e imputó a los recurridos incurrir en alienación parental.

La cuestión de la custodia continúa irresoluta por el Tribunal de Primera Instancia, por lo que no será atendida por este foro en esta ocasión. Sin embargo, durante el trámite, la parte recurrida presentó *Petición para fijación de pensión alimentaria* el 14 de septiembre de 2022.[5] Solicitó una vista de alimentos ante la Oficina de Examinadores de Pensiones Alimentarias y la imposición de honorarios. Por ser una parte indispensable, también se emplazó mediante edicto a la madre de los menores, señora Raja Kamal Jamil.[6]

---

[2] Apéndice del recurso, págs. 4-9.

[3] La hermana menor M.A.O. vive en Jordania junto a la madre de los tres menores, Raja Kamal Jamil.

[4] Apéndice del recurso, págs. 10-17.

[5] Apéndice del recurso, págs. 18-19.

[6] Véase, Apéndice del recurso, págs. 21-22; 23.

Así las cosas, la Examinadora de Pensiones Alimentarias (EPA), Lcda. Cristina Vélez del Toro, concedió un término a las partes para que presentaran la Planilla de Información Personal (PIPE) y la evidencia de sus ingresos.[7] Los litigantes iniciaron el correspondiente descubrimiento de prueba.[8]

En lo que nos compete, la parte recurrida entregó la PIPE en la que relacionó los gastos de los menores, mas no sus ingresos. Así, pues, la vista de fijación de pensión alimentaria se fijó para el 17 de octubre de 2023.[9] Previo al cónclave, la parte recurrida presentó oportunamente un escrito intitulado *Moción en solicitud de reconsideración de Orden.*[10] A su vez expuso que, si bien entregó la PIPE, por ser la abuela y el tío de los menores, sus ingresos no se utilizarían para fijar la pensión de alimentos. Señaló que esta responsabilidad atañe únicamente a los padres de I.A.O. y S.A.O., sobre quienes el tribunal primario ostentaba jurisdicción sobre sus personas. Por consiguiente, solicitó que se le eximiera de presentar evidencia de sus ingresos. La EPA estuvo de acuerdo con dicha solicitud.[11] Por su parte, el peticionario replicó.[12] En resumen, arguyó que el ordenamiento jurídico pertinente toma en consideración los ingresos del custodio y del no custodio para fijar la pensión alimentaria, incluyendo a los parientes.

Evaluada la contención, el tribunal sentenciador notificó el 17 de octubre de 2023 la *Resolución* recurrida y expresó:[13]

> Ante solicitud de la parte demandada en cuanto a que se ordene descubrimiento de prueba en cuanto a los ingresos de la parte demandante, resolvemos que las *Guías mandatorias para computar las pensiones alimentarias*, conocido como Reglamento 8529 de 30 de octubre de 2014, según enmendado, atiende en su artículo 8 dicha situación. Por lo tanto, siendo los demandante[s], abuelos custodios de los menores de edad, no procede el descubrimiento de prueba en cuanto a sus ingresos, toda vez que tanto el

---

[7] Apéndice del recurso, págs. 24-27.
[8] Refiérase, Apéndice del recurso, págs. 28; 29; 30-31; 32; 33-34, 35.
[9] Apéndice del recurso, págs. 36-37; 38.
[10] Apéndice del recurso, págs. 39-40.
[11] Apéndice del recurso, pág. 41.
[12] Apéndice del recurso, págs. 42-45; 46-47.
[13] Apéndice del recurso, págs. 1-2; 3.

padre como la madre se les ordenará proveer una pensión alimentaria para beneficio de los y las menores que residen con personas distintas a [é]stos.

Inconforme, la parte peticionaria instó el recurso de *certiorari* del título el 14 de noviembre de 2023 y esbozó los siguientes señalamientos de error:

ERRÓ EL HONORABLE TRIBUNAL A QUO AL IMPEDIR EL DESCUBRIMIENTO DE PRUEBA EN CUANTO A LOS INGRESOS DE LA PARTE DEMANDANTE AL AMPARO DEL ARTÍCULO 8 DEL REGLAMENTO 8529 DE 30 DE OCTUBRE DE 2014, A PESAR DE QUE LA LEY ORGÁNICA DE LA ADMINISTRACIÓN PARA EL SUSTENTO DE MENORES, INFRA, EXIGE QUE SE TOME EN CUENTA EL INGRESO DE LOS PROGENITORES QUE SON PERSONA CUSTODIA.

ERRÓ EL HONORABLE TRIBUNAL A QUO AL IMPEDIR EL DESCUBRIMIENTO DE PRUEBA EN CUANTO A LOS INGRESOS DE LA PARTE DEMANDANTE A PESAR DE QUE [É]STOS OSTENTAN LA CUSTODIA PROVISIONAL Y EL CÓDIGO CIVIL DE 2020, QUE ES FUENTE DE DERECHO DE MAYOR JERARQUÍA QUE EL REGLAMENTO 8529 DE 30 DE OCTUBRE DE 2014, EXIGE QUE [É]STOS PROVEAN ALIMENTOS.

De otro lado y en lo pertinente al curso interlocutorio de la solicitud de *certiorari*, el 14 de noviembre de 2023, la representación legal del peticionario —licenciadas Pilar Pérez Rojas y Zoila Espinoza Vaquer— acreditó la notificación por correo certificado con acuse de recibo a los tres abogados de la parte recurrida; a saber: Alvin Ramos Miranda, Daliana Ramos Rosado y Liz Tsounis Negrón. Entonces, el 30 de noviembre de 2023, la licenciada Tsounis Negrón presentó una *Moción en solicitud de desestimación de certiorari*, y planteó que no se le notificó el recurso. Las abogadas Pérez Rojas y Espinoza Vaquer replicaron. Basado en el expediente electrónico del caso, explicaron que equivocadamente entendieron que la letrada compartía oficina con la licenciada Ramos Rosado, por lo que utilizaron la misma dirección postal.[14] Argumentaron, además, que las notificaciones adecuadas al abogado Ramos Miranda y a la abogada Ramos Rosado eran suficientes

---

[14] Refiérase a la Certificación en la *Petición de Certiorari*, pág. 23.

para cumplir con el requisito de notificación.[15] Véase, *Sánchez Torres v. Hosp. Dr. Pila* 158 DPR 707, 711- (2003), que cita a *Ex parte Zalduondo y P.R. Fertilizer Co., Int.*, 47 DPR 134 (1934). En torno a este asunto, el tratadista José Cuevas Segarra ha señalado que "[e]n caso que varios abogados representen a una sola parte, la notificación a cualesquiera de ellos es suficiente, sin que haya que notificarle a todos individualmente". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, T. V, pág. 1888. A la luz de los expuesto, declaramos **sin lugar** la solicitud de desestimación.

Por otra parte, mediante nuestra *Resolución* de 16 de noviembre de 2023, notificada en la misma fecha, concedimos a la parte recurrida un término de veinte (20) días para presentar su postura y advertimos que, de no comparecer, procederíamos a dar por perfeccionado el recurso. El plazo expiró el 6 de diciembre de 2023, sin que la parte recurrida presentara su alegato ni solicitara una prórroga. Según lo anticipado, damos por perfeccionada la petición de *certiorari* y procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**El auto de *certiorari***

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró*, *supra*. El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de

---

[15] Es meritorio señalar que ninguno de los escritos judiciales que conforman el Apéndice ha sido suscrito por la licenciada Tsounis Negrón.

razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera…" *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró*, *supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, *supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró*, *supra*, pág. 335; *Pueblo v. Ortega Santiago*, *supra*.

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone como sigue:

> .     .     .     .     .     .     .     .
>
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, **en casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).
>
> .     .     .     .     .     .     .     .

La regla procesal fija taxativamente los asuntos aptos para nuestra revisión interlocutoria mediante el recurso de *certiorari*, así como aquellas **materias que, por excepción, ameritan nuestra intervención**

**adelantada**, ya fuese por su naturaleza o por el efecto producido a las partes. *800 Ponce de León v. AIG*, *supra*, pág. 175.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) **Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración**.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Claro está, es norma reiterada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España*

*Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

### *Los alimentos de los hijos e hijas menores de edad*

En nuestro ordenamiento jurídico los progenitores "son los llamados **en primera instancia** a proveer alimentos a sus hijos". (Énfasis nuestro). *Martínez De Andino v. Martínez De Andino*, 184 DPR 379, 385 (2012). Esta obligación indivisible emana de los Artículos 558[16] y 590[17] del Código Civil de Puerto Rico, 31 LPRA secs. 7104 y 7242. Bajo el título de *La filiación natural*, el Artículo 558 enumera los derechos que surgen de ésta, entre los que se encuentra el derecho a "recibir alimentos por parte de ambos progenitores". Por su parte, bajo el título de *La patria potestad*, el Artículo 590 del mismo cuerpo legal se dispone expresamente que "[l]os progenitores tienen sobre el hijo sujeto a su patria potestad los siguientes deberes y facultades (...) alimentarlo y proveerle lo necesario para su desarrollo y formación integral". Este derecho de los hijos a recibir alimentos de sus padres subsiste aun después del divorcio de éstos. *Martínez De Andino v. Martínez De Andino*, *supra*.

Huelga decir que estas disposiciones operan mientras los hijos e hijas son menores de edad; ya que, si el hijo o hija es mayor de edad, de ordinario, aplican las disposiciones sobre la obligación alimentaria entre parientes. Al respecto, mientras el Artículo 658[18] del Código Civil, 31 LPRA sec. 7541, consigna los parientes obligados recíprocamente a proporcionarse alimentos, a saber: los cónyuges, **los ascendientes**, descendientes y los hermanos; el Artículo 660,[19] 31 LPRA sec. 7543, dispone la prelación entre los alimentantes: el cónyuge, los descendientes del grado más próximos, **los ascendientes del grado más próximo** y los hermanos. El Tribunal Supremo ha opinado que es de este articulado de

---

[16] Anterior Artículo 118 del Código Civil de 1930, 31 LPRA sec. 466 (derogado).
[17] En referencia al Artículo 153 del Código Civil de 1930, 31 LPRA sec. 601 (derogado).
[18] En alusión al Artículo 143 del Código Civil de 1930, 31 LPRA sec. 562 (derogado).
[19] Equivalente al Artículo 144 del Código Civil de 1930, 31 LPRA sec. 563 (derogado).

donde surge la **obligación subsidiaria** de los abuelos a alimentar a sus nietos y nietas.

> En otras palabras, la obligación "**surge cuando los padres no pueden proveerles a sus hijos los alimentos**, **ya sea porque están física o mentalmente incapacitados** para hacerlo o porque no cuentan con suficientes recursos económicos para cumplir con su obligación".[20] **La obligación de los abuelos puede surgir, tanto cuando los padres no puedan suplir las necesidades alimentarias de sus hijos en su totalidad como cuando sólo puedan cubrirlas parcialmente**. En los casos en los que la obligación se circunscriba a los abuelos, conforme a las disposiciones citadas, esta incluye tanto a los paternos como a los maternos. (Énfasis nuestro). *Martínez De Andino v. Martínez De Andino*, *supra*, págs. 385-386.

En armonía, nuestro Código Civil dispone que se seguirán "los criterios dispuestos en la ley especial complementaria", Art. 666 del Código Civil, 31 LPRA sec. 7562. A esos efectos, la Ley Núm. 5 de 30 de diciembre de 1986 (Ley Núm. 5-1986), *Ley Orgánica de la Administración para el Sustento de Menores* (ASUME), 8 LPRA sec. 501 *et seq.*, establece como política pública poner en vigor la "paternidad responsable", toda vez que corresponde al padre y a la madre el deber, entre otros, de alimentar a sus hijos no emancipados. Art. 3 de la Ley Núm. 5-1986, 8 LPRA sec. 502. Para la consecución de este fin, estatuye:

> Los padres e hijos, los cónyuges, los ex cónyuges [*sic*] y los parientes están obligados recíprocamente a ayudarse y sostenerse económicamente, según dispuesto en el Código Civil y en la jurisprudencia interpretativa. **Los padres de un menor son responsables de su manutención** y el tribunal o el Administrador podrá ordenarles pagar una suma justa y razonable por concepto de pensión alimentaria a tenor con el Artículo 19 de esta Ley. **El deber de mantener a los hijos continúa aun cuando**, por orden del tribunal o administrativa, se haya ubicado al menor en un hogar sustituto o cuando, para propósitos de protección, **el menor se encuentre bajo la custodia de otra persona**, o de una agencia o institución pública o privada. En el caso en que la salud física o emocional del menor, así como sus necesidades y aptitudes educacionales o vocacionales lo requieran, la obligación de los padres podría continuar hasta después que el alimentista haya cumplido la mayoridad. (Énfasis nuestro). Art. 4 de la Ley Núm. 5-1986, 8 LPRA sec. 503.

---

[20] *Piñero Crespo v. Gordillo Gil*, 122 DPR 246, 253 (1988).

Surge de la letra antes citada que es a los progenitores de un menor de edad a quienes corresponde la preeminente obligación de alimentarlos. Tan es así que, aun cuando otra persona ostente la custodia del menor, el deber de sus padres de proveer alimentos continúa. Asimismo, la naturaleza subsidiaria de la prestación de la pensión por parte de los abuelos u otros parientes se reproduce en el estatuto. En particular, el Artículo 7B de la Ley Núm. 5-1986 dispone que, el juez administrativo de la ASUME atenderá los casos en que "de forma **subsidiaria** se solicite a uno o a varios abuelos, o a uno o varios parientes, proveer pensión alimentaria para beneficio de un menor de edad". (Énfasis nuestro). 8 LPRA sec. 506B (2) (m) (3); véase, además, Art. 11 de la Ley Núm. 5-1986, 8 LPRA sec. 510 (b) (7) (C) (iii).

Cónsono con lo anterior, el Artículo 8 de las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico*, Reglamento Núm. 8529 de 30 de octubre de 2014, dispone en el inciso (1) que, cuando la persona custodia y no custodia sean los progenitores de un menor, la pensión alimentaria se determinará a base de las instrucciones de la reglamentación. En el caso que otra persona distinta a los progenitores ostente la custodia del menor, se aplica el inciso (2) que establece lo siguiente:[21]

---

[21] Cabe señalar que la disposición reglamentaria se ha mantenido prácticamente inalterada en el borrador de las nuevas guías, aún en proceso de discusión a la fecha de este dictamen. A continuación, la propuesta lee así:

PARTE III. INSTRUCCIONES PARA CALCULAR LA PENSIÓN ALIMENTARIA BÁSICA

Artículo 6 - Aplicación

1. Cuando el padre y la madre de un menor sean la persona custodia y no custodia de este, la pensión alimentaria se determinará a base de las reglas que se incluyen en esta Parte III del Reglamento.

2. En los casos en los que una persona jurídica o una persona natural, distinta al padre o a la madre, ostente la custodia del alimentista, tanto el padre como la madre de este son personas no custodias y a ambas se le ordenará proveer una pensión alimentaria para beneficio del menor de edad alimentista. El juzgador considerará solamente el ingreso combinado del padre y de la madre, y en caso de aplicar, se tomará en consideración el ingreso de los cónyuges de dichas partes y se determinará la pensión alimentaria.

3. Al momento de determinar la pensión alimentaria conforme a este Reglamento, el juzgador considerará indistintamente a uno de los progenitores como la persona custodia (PC) y al otro como la persona no custodia (PNC), para efectos de la aplicación de las reglas que aquí se incluyen. Sin embargo, a

En los casos en los que una persona jurídica o **una persona natural, distinta al padre o a la madre, ostente la custodia del o de la alimentista, tanto el padre como la madre de este o esta son personas no custodias y a ambas se le ordenará proveer una pensión alimentaria** para beneficio de los y las menores de edad. El juzgador o la juzgadora considerará solamente el ingreso combinado del padre, de la madre y, si aplica, el de los cónyuges de dichas partes y determinará las pensiones alimentarias de conformidad con esta parte del Reglamento. Al momento de determinar la pensión alimentaria conforme con la parte III de este Reglamento, el juzgador o la juzgadora **considerará indistintamente a uno de los progenitores como la persona custodia y al otro como la persona no custodia**, para efectos de la aplicación de las reglas que en dicha parte se incluyen. Sin embargo, **a ambas se les ordenará proveer en forma de pensión alimentaria lo que resulte de la aplicación del Reglamento**. (Énfasis nuestro).

**III.**

En la presente causa, el peticionario arguye que el Reglamento Núm. 8529, *supra*, "se encuentra en una clara contradicción"[22] con el resto de las disposiciones legales que versan sobre la obligación de alimentar a los menores de edad. Sostiene que, para computar la pensión de sus hijos, se requiere considerar el ingreso de la persona custodia, en referencia a la parte recurrida. A esos fines, solicita que se permita el descubrimiento de prueba de los ingresos de la abuela y el tío de los menores I.A.O. y S.A.O.  No le asiste la razón.

Como cuestión de umbral, si bien el asunto esgrimido en el recurso discrecional está relacionado con el descubrimiento de prueba, éste está enmarcado dentro de la materia de relaciones de familia, la cual sí está contemplada en la Regla 52.1 de Procedimiento Civil, *supra*. Igualmente, en atención a la Regla 40 de nuestro Reglamento, *supra*, somos del criterio que la etapa del procedimiento en que se presenta la cuestión planteada es la más propicia para su consideración. Nuestra intervención temprana pretende evitar que la fijación de la pensión alimentaria a favor de los menores I.A.O. y S.A.O. y sus respectivas revisiones, bajo las

---

ambas se les ordenará proveer en forma de pensión alimentaria lo que resulte
de la aplicación de este Reglamento.
[22] *Petición de Certiorari*, pág. 11.

mismas circunstancias presentes, se vea retrasada por el inmeritorio argumento argüido por el peticionario.

El caso del epígrafe se asienta en un estado de Derecho prístino del que la parte peticionaria ha hecho total abstracción. Como se conoce, en cumplimiento con el deber de *parens patriae*, el Estado ha promulgado un ordenamiento jurídico que procura la protección de los menores de edad. Los alimentos de los menores de edad no emancipados incluyen todo lo que es indispensable para su sustento, vivienda, vestimenta, recreación, asistencia médica, educación y los gastos extraordinarios para la atención de sus condiciones personales especiales, conforme la posición social de la familia. Véase, Art. 653 del Código Civil, 31 LPRA sec. 7531. Como parte de los derechos que surgen de la filiación, así como del conjunto de deberes y derechos que emanan de la patria potestad, la obligación para satisfacer estas necesidades recae en primera instancia sobre los progenitores de los menores. Por consiguiente, si alguno de los padres no puede cumplir con la responsabilidad de alimentar a sus hijos e hijas menores de edad, entonces, se acude de manera subsidiaria a los parientes más cercanos para suplir las necesidades de los alimentistas.

Contrario a lo alegado por el peticionario, según reseñamos antes, el Código Civil, la Ley Núm. 5-1986 y el Reglamento Núm. 8529 están alineados para compeler a los progenitores a cumplir con la obligación de alimentar a sus hijos e hijas. Ello, incluso después del divorcio y aun cuando los alimentistas estén bajo la custodia de otra persona natural o jurídica. Ahora bien, cuando uno o ambos progenitores estén económica, física o mentalmente incapacitados para satisfacer las necesidades alimentarias de sus hijos e hijas, entonces surgiría la obligación de los abuelos paternos y maternos u otros parientes de alimentarlos. En particular, los abuelos y nietos —ascendientes y descendientes de segundo grado y en adelante— responden subsidiaria y mancomunadamente. Art. 662 del Cód. Civil, 31 LPRA sec. 7545.

En el presente caso, la señora Khetam Odeh y el señor Akram Odeh, abuela y tío de los menores I.A.O. y S.A.O., respectivamente, solicitaron al tribunal que fijara una pensión alimentaria a favor de los hijos del peticionario. Como parte del debido proceso de ley, tanto el padre como la madre de ambos menores fueron emplazados. Los ingresos de ambos padres serán considerados para fijar la cuantía de la pensión alimentaria. En consecuencia, toda vez que, tanto al peticionario como a la madre de los menores se les ordenará proveer una pensión alimentaria para el sustento de I.A.O. y S.A.O., es improcedente el descubrimiento de prueba de los ingresos de la parte recurrida, independientemente, que los hermanos residan con su abuela y su tío o éstos ostenten su custodia provisional. Únicamente, en el caso que el señor Awadallah Odeh y la señora Raja Kamal Jamil no puedan satisfacer parcial o totalmente las necesidades alimentarias fijadas en su día, el foro *a quo* podrá acudir de manera subsidiaria a los parientes de I.A.O. y S.A.O. para asegurar el bienestar de ambos menores. En suma, de conformidad con la situación de hechos presentada, el foro de primera instancia no erró al determinar que sólo considerará la evidencia de los ingresos de los progenitores de los hermanos I.A.O. y S.A.O. para establecer el monto de la pensión alimentaria a su favor.

**IV.**

Por los fundamentos expuestos, expedimos el auto de *certiorari* solicitado y confirmamos la *Resolución* recurrida.

Lo acordó el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones